ERIE COUNTY.

JULY TERM, 1882, No. 256.            DECEMBER 6, 1882.

## Erie and Pittsburgh Railroad Company's Appeal.

1. Testimony by the grantor of lands to a railroad company of a contemporaneous agreement with the agent of the company to reconvey a portion of the lands which was reserved, corroborated by evidence of the subsequent occupation by the company of the land reserved by the special permit of the grantor, and by a subsequent deed to the grantor by the agent of the company in his individual capacity for this land, is sufficient upon which to support a decree for a reconveyance against the company.

2. Where a bill in equity set forth an " express agreement officially in writing " by the agent of a railroad company to redeed to the grantor certain lands, and the answer denied that the agent " entered into an express agreement officially in writing to redeed to the plaintiff " the lands; *Held* that the denial was not so distinct and positive as to afford grounds for the application of the rule in equity that a denial in the answer must be met and overcome by more than one witness.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal of the Erie and Pittsburgh Railroad Company from a decree of the Court of Common Pleas of *Erie County* overruling exceptions to and confirming the report of a master.

Bill in equity filed by William Gibson against the Erie and Pittsburgh Railroad Company to compel the execution of a good and valid deed for certain land.

The bill set forth, *inter alia*, that on January 2, 1860, and prior thereto, the complainant was the owner of a certain piece or parcel of land situated in the borough of Jamestown, Mercer county ; that the Erie and Pittsburgh Railroad Company were about to locate their road through said lands; that John A. Tracy and John H. Walker, the former president and the latter director and attorney for the company, called upon the complainant and agreed to pay him $600 for the right of way through his lands, and, in pursuance of the negotiation, the complainant made and executed a deed to Tracy in trust for the defendant, reserving for himself lots designated as lots Nos. 1 and 2 ; that when the engineer came to locate the road, Tracy and Walker returned to complainant and negotiated with him to take back the earlier deed and give a

new deed "embracing more land, for a depot building, covering land reserved by complainant, with the express agreement, officially in writing, to redeed to the complainant all the lands not covered by the depot building of lot No. 2 reserved in the former deed, and bound the said company to make the reconveyance as aforesaid;" that in pursuance of this agreement the complainant executed a deed, January 13, 1860, to Tracy, as trustee for the company, of lands including lots Nos. 1 and 2; that in conformity with the agreement, Walker and Tracy assured the complainant that they would send him a deed duly and properly executed by the railroad company for the land in lot No. 2 not covered by the depot; that, subsequently, he received a deed for the said land, dated April 13, 1863, and, trusting to the judgment and learning of Walker and Tracy, he believed it to be in due form of law until within two years last past, when he discovered that the deed was defective in form; that it was executed by John A. Tracy and wife, in his personal capacity, when it should have been made by the railroad company in due form of law; and that when the error was discovered and communicated to Walker, he directed the complainant to call upon the company for a new deed for the land claimed. The bill prayed that the railroad company should be ordered to execute and deliver to the complainant a good and valid deed for the land in question.

The answer of the defendant admitted that the land had originally belonged to the complainant, and had been negotiated for on behalf of the company by Tracy and Walker, but denied the alleged consideration, and set forth "that it may be true that the engineer may have required more land and in some different shape for depot building, but of this the defendants are not advised; but it is not true that the said John A. Tracy and John H. Walker entered into an express agreement, officially, in writing, to redeed to the plaintiff all the lands not covered by the depot building of lot No. 2, and bound the said company to make reconveyance, but, on the contrary, the deed made by the plaintiff contains no restrictions or reservations, and is an absolute and entire conveyance;" that said defendants are not advised of any agreement made by Walker or Tracy, as there is no such agreement or stipulation in writing among the records of said defendants, nor, as they are informed and believe, was there any so made, to send plaintiff a deed duly and properly executed by said railroad; that Tracy and wife did make and execute a deed as set forth, but

[Erie and Pittsburgh Railroad Company's Appeal.]

said defendants are not affected by said conveyance, as they had no authority to make a conveyance of the property of said Erie & Pittsburgh RR. Co.

The Court appointed A. J. Foster, as master to report the facts and a decree. The master reported, *inter alia*, as follows :

Dr. Gibson testified that Messrs. Walker and Tracy proposed that he, Gibson, should execute another deed of conveyance covering the land described in the deed of conveyance, dated January 2, 1860, and to embrace more land on each side of the track south of the J. & F. road, and also to deed to the company defendant the entire depot lot, including the pieces reserved, and they would give him their obligation in writing as the officers of the company, to redeed back to him the grounds reserved, except so much as might be covered by the depot building, which he, Dr. Gibson, agreed to ; that they executed their obligation to him in writing as officers of the company defendant, to redeed back to him all of the lot No. 2, reserved, not covered by the depot building, and he, Dr. Gibson, made and executed the deed of conveyance to the company defendant ; that the obligation executed by Messrs. Walker and Tracy and deed were executed at one and the same time, and was one entire transaction, and one was the consideration for the other as to the grounds reserved, or so much thereof as would not be covered by the depot building.

By his special permit, the Erie & Pittsburgh Railroad Company occupied the ground that he supposed had been properly redeeded back to him, with some small buildings and structures, until a short time before bringing this suit, when the Pennsylvania company, lessees of the Erie & Pittsburgh railroad, took forcible possession of the grounds.

The master further reported .

"It would be very difficult for a chancellor to come to any other conclusion, from all the testimony in the case, than that the deed made and executed by John A. Tracy and wife to Dr. Gibson, Exhibit 'C,' was executed in pursuance of some previous arrangement or contract with Dr. Gibson. Why should Mr. Tracy go through the solemnity and trouble of making and executing the deed to Dr. Gibson if there had been no previous understanding or contract with Dr. Gibson, and he, Dr. Gibson, had no claim? Mr. Tracy personally had no interest in the land whatever. Mr. Tracy's declarations, as testified to by Mr. Scott, that he did it to get rid of Dr. Gibson's im-

portunities, if evidence at all, are too trifling to be considered by a chancellor.

"And the fact that the company defendant occupied the land in dispute several years by the special permit of Dr. Gibson, is some corroboration of Dr. Gibson's version of the transaction ; it shows that the company defendant then considered the land Dr. Gibson's.    It is also in evidence that the Pennsylvania company, lessees of the Erie & Pittsburgh railroad, opened negotiations with Dr. Gibson for the purchase of the land in dispute.    See Exhibit 'E,' filed with plaintiff's testimony.    And it does not appear that this was done with a view of compromising a dispute, as contended for by the counsel for defendant in his argument, because at that time there was no dispute as to the ownership of this land now in dispute, and not until several years after.

" With this view of this case, the master finds . . . that the prayer of the complainant in the bill of complaint should be granted as prayed for."

He reported a decree accordingly.

The defendant filed, *inter alia*, the following exceptions :

" *Second.* The evidence of a grantor alone and unsupported would not be sufficient to alter and vary, to enlarge or diminish, or attach conditions to the deed of conveyance, and the testimony of Dr. Gibson as to the contract by which his deed of January 13, 1860, was to be altered and diminished by a reconveyance of a part of the land described in said deed, is unsupported by the testimony of a single witness, and said deed ought not to be affected by the testimony of the grantor, Dr. Gibson, alone.

" *Third.* When a deed of conveyance contains no reservations or conditions for a reconveyance, the grantor setting up a contract of even date with said deed to reconvey, there should be more evidence of such a contract than the mere testimony of the grantor himself, and in this case there is no evidence except that of the plaintiff, Dr. Gibson, himself.

" *Fourth.*    The fact that John A. Tracy and wife some years after made a deed to Dr. Gibson is no evidence of a prior existing contract between the plaintiff, Dr. Gibson, and the defendant, the Erie & Pittsburgh railroad.

" *Fifth.* The master erred as to his conclusions of the law in the case."

The Court October 14, 1881, filed the following opinion :

"The finding of the master in this case is based almost

wholly upon the testimony of the complainant, which, however, finds some substantial corroboration in the fact proven of his having exercised ownership over the land in controversy for a number of years, as well as in the further significant circumstance that John A. Tracy, while president of the corporation defendant, executed a deed conveying in quit-claim the land now claimed to the complainant. This conveyance being executed by Tracy and wife as individuals would, of course, be worthless so far as vesting the title of the Erie & Pittsburgh Railroad Company in complainant is concerned ; but as the act of Mr. Tracy while holding the office of President, and as an apparent attempt on his part to carry out the alleged contract before made between him and Mr. Walker, representing the railroad, with Dr. Gibson at the time of the execution of the deed by the latter, it becomes an item of evidence to be taken into consideration in connection with the testimony of the compainant and the fact of possession being held by him. The rule is that the acts and declarations of officers and agents made after the transaction do not bind the principal, but it seems to me that it would be too close and rigid an application of this rule had the master excluded this deed under the facts as proven before him. It is not a mere declaration of Mr. Tracy, but it is a poignant fact going to show how the matter was understood by himself and Mr. Walker, who was a director, and, as it is alleged, the attorney of the company at the time, and they two being the officers who secured the deed from complainant at the time the alleged agreement was made. There is much of testimony taken which is irrelevant, and which the master says was not considered by him. The various conversations with Messrs. Walker and Tracy, and the declarations alleged to have been made by them, must be excluded, of course, as not having been made in the course of the transaction, but afterwards.

But leaving out of view the fact referred to, namely, the execution of the deed by John A. Tracy and wife, under the direction and at the instance of Mr. Walker, and excluding all the evidence to which objection is made, how will the case stand ?

The complainant is a competent witness. His reputation for truth was not attempted to be impeached, and, as before stated, he is corroborated, to some extent at least, by the fact of his exercising ownership over the property in question during several years after the deeds to the company were executed. Taking his testimony to be

[Erie and Pittsburgh Railroad Company's Appeal.]

true, and it is not contradicted, then the equity is with him and a reconveyance ought to be ordered in compliance with the original contract.

It is said that it ought not to be that the title to land should be affected by the unsupported evidence of the grantor in the face of his own deed, and that a wide door is thus opened for the disturbance of the rights of property. This may be, but it has been long held in Pennsylvania that the rule of evidence that 'parol contemporaneous evidence is inadmissible to vary or alter the terms of a valid written instrument' does not prevail here, and as said by Judge Paxson in delivering the opinion of the Supreme Court in Lippincott v. Whitman, 2 Norris, 244, 'It may be that parol evidence in such cases is of a dangerous character. We may concede it to be so. But the rule in this State is too well settled to be disturbed; on the other hand, it is in the experience of every lawyer that if we were to adopt as an inflexible rule the precept that when a man once puts his hand to a written instrument the terms thereof cannot, under any circumstances, be modified or contradicted, it would lead to consequences of a most serious character. Instead of being a shield against fraud, it would be its efficient and sure protection. Neither view of the case is entirely free from difficulty. The rule adopted in this State seems to be the lesser of the two evils, and because it is so, and because it has become established by a line of authority, we prefer to adhere to it.'

The conclusion of the master would appear, therefore, to be in accordance with law and the evidence, and the exceptions are overruled and it is ordered that a decree be entered as reported by the master and that the respondents pay the costs."

The defendant then appealed, assigning as errors the refusal to sustain its exceptions to the master's report.

*J. Ross Thompson* for appellant.

The evidence of the grantor was not sufficient to justify the master in his conclusion. There was no evidence in writing produced, and no witness to corroborate the evidence of the grantor. If deeds of conveyance are to be contradicted, altered, or varied on such evidence as this, then indeed are titles and tenures of land in Pennsylvania uncertain. This would be going much farther than is laid down in the case of Lippincott v. Whitman, 2 Norris, 244, and a long line of cases decided in Pennsylvania.

[The Pennsylvania Company *v.* Allen.]

*Benson & Brainerd* for appellees.

The evidence of the grantor was confirmed by the engineer's plot, the Tracy deed, the occupancy of the land by Dr. Gibson, and the license to the company, all potent facts as evidence of the contract. The contract was a defeasance and not necessarily part of the deed. 'It is a general rule that the defeasance shall be a part of the same transaction with the conveyance, though the defeasance may be dated after the deed : 12 Mass., 456. The cases are very numerous in our reports where deeds absolute upon their face are recorded and the defeasance accompanying them not recorded : Lippincott *v.* Whitman, 2 Norris, 244.

DECEMBER 30, 1882.—PER CURIAM : There was more evidence than the testimony of the grantor, the complainant to the cotemporaneous agreement to reconvey. Nor is the denial in the answer of the actual agreement in writing as distinct and positive as to afford ground for the application of the rule in equity, that a denial in the answer must be met and overcome by more than one witness. The answer is that it is not true that Tracy and Walker entered into an express agreement, *officially*, in writing to redeed the land in question. Upon the facts reported by the master, we think the decree was right.

Decree affirmed and appeal dismissed at the costs of the appellants.